[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14343
Non-Argument Calendar
_____

D.C. Docket No. 2:09-cv-01877-RDP-PWG

CHRISTOPHER JORDAN JACKSON,

Petitioner-Appellant,

versus

WARDEN,
THE ATTORNEY GENERAL OF
THE STATE OF ALABAMA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(April 8, 2013)

Before HULL, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

Christopher Jordan Jackson, an Alabama prisoner serving a life sentence without parole for attempted murder, appeals the district court's denial of his 28 U.S.C. § 2254 federal habeas corpus petition.  In his petition, Jackson alleged that Lieutenant Tony Richardson brought him to the Jefferson County Sheriff's Department for questioning about an attempted murder.  According to Jackson, after he requested a lawyer, Richardson told him that the interrogation had ended, shut off the audio recorder, and left Jackson alone in the interrogation room for an hour.  Unbeknownst to Jackson, Richardson recorded incriminating cell phone conversations that Jackson made on a cell phone while alone.  Jackson argued, inter alia, that the state trial court's ruling that these cell phone conversations were admissible contravened Miranda v. Arizona, 384 U.S. 436 (1966), and other Supreme Court cases.

> We granted a certificate of appealability on the following issue:
>
> Whether Jackson's rights under Miranda v. Arizona, 384 U.S. 436 . . . (1966), were violated when, after he was read his Miranda rights and invoked his right to counsel, and a detective indicated that questioning had ceased, devices continued to record statements that Jackson made while talking on a cellphone?

On appeal, Jackson argues that, after he invoked his right to counsel, Lieutenant Richardson performed the functional equivalent of interrogation by recording his cell phone conversations in violation of Miranda.  After careful review, we affirm.

We review a district court's denial of a habeas petition under § 2254(d) de novo.  Sims v. Singletary, 155 F.3d 1297, 1304 (11th Cir. 1998).  Relevant here, § 2254(d) provides that a federal court may not grant habeas relief on claims that were previously adjudicated in state court, unless the state court's adjudication resulted in a decision that involved an unreasonable application of clearly established Supreme Court law.  28 U.S.C. § 2254(d)(1).  The "unreasonable application" clause within § 2254(d)(1) permits federal habeas relief if the state court correctly identified, but unreasonably applied, the governing legal principle from Supreme Court precedent to the facts of petitioner's case.  Borden v. Allen, 646 F.3d 785, 817 (11th Cir. 2011), cert. denied, 132 S.Ct. 1910 (2012).  For a state court's application of Supreme Court precedent to be deemed "unreasonable," the state court's adjudication cannot merely be "incorrect or erroneous;" it must have been "objectively unreasonable."  Id.  "A state court's determination that a claim lacks merit precludes habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  Id. (quotations omitted).

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  In Miranda, the Supreme Court held that the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to

3

secure the privilege against self-incrimination." 384 U.S. at 444. As part of these procedural safeguards, the government must inform the defendant that he has the right to consult with a lawyer and have a lawyer present with him during interrogation. Id. at 467-73. Once the accused invokes his right to counsel, authorities may not subject him to further interrogation until counsel has been made available to him, unless the accused himself initiates further communication with the police. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

Interrogation occurs "whenever a person in custody is subjected to either express questioning or its functional equivalent," which refers to words or actions that the police should know are reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). In Innis, a suspect was arrested for murder with a shotgun and invoked his Sixth Amendment right to counsel. Id. at 293-94. While officers drove the suspect to the police station, one of the officers told another officer that a school for handicapped children was located near the scene of the murder and that, "God forbid one of [the children] might find a weapon with shells and they might hurt themselves." Id. at 294-95. The suspect then told the officers that he wanted to show them where the gun was located. Id. at 295. The Supreme Court held that the officers' conversation did not constitute interrogation because the officers should not have known that their conversation was reasonably likely to elicit an incriminating response. Id. at 303.

4

Moreover, the Supreme Court has held that officers do not interrogate a suspect simply by hoping he will incriminate himself.  Arizona v. Mauro, 481 U.S. 520, 529 (1987) (holding that no interrogation occurred when officers were merely silent third parties to a conversation between the accused and his wife).  Similarly, "[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within Miranda's concerns."  Illinois v. Perkins, 496 U.S. 292, 297-98 (1990) (upholding inmate's confession to an undercover agent posing as cellmate in response to agent's inquiry whether inmate had ever killed anyone).  The Supreme Court has said that if "the suspect does not know that he is speaking to a government agent there is no reason to assume the possibility that the suspect might feel coerced."  Id. at 299.

In this case, there is no dispute that Jackson properly invoked his right to counsel and that any interrogation that followed thus violated his Fifth Amendment rights.  Edwards, 451 U.S. at 484-85.  The issue is whether Lieutenant Richardson's recording of Jackson's cell phone conversations amounted to interrogation.  We hold, on this record, the Alabama Court of Criminal Appeals's implicit conclusion that this situation did not constitute interrogation was not an unreasonable application of clearly established Supreme Court law.  See 28 U.S.C. § 2254(d)(1).  Indeed, Jackson cites no Supreme Court case holding that a factual situation similar to his constituted interrogation.  Although he argues that his case

is analogous to United States v. Terzado-Madruga, 897 F.2d 1099, 1110 (11th Cir. 1990) (holding that the government violated a defendant's Sixth Amendment rights by recording conversations between the defendant and an undercover informant), we ask on federal habeas review whether a state court reasonably applied Supreme Court precedent. Parker v. Matthews, 132 S.Ct. 2148, 2155 (2012) (explaining that circuit precedent "cannot form the basis for habeas relief under AEDPA").

In any event, the Supreme Court has said that ploys to lull a suspect into a false sense of security that do not rise to the level of "compulsion or coercion to speak" do not violate Miranda. Perkins, 496 U.S. at 297. While Lieutenant Richardson's statement that questioning had ceased might have led Jackson to believe that he was not being listened to, it cannot be said that the government compelled or coerced him into making the calls. As we see it, Richardson's actions were no more likely to lead to an incriminating response than were the actions of the officers in Innis, who worried in the presence of the accused that, if they did not find the murder weapon, children at a handicapped school could be harmed. Innis, 446 U.S. at 294-95. Therefore, we cannot say that the Alabama Court of Criminal Appeals's conclusion that Richardson did not interrogate Jackson by recording his cell phone conversations was unreasonable under Supreme Court precedent. Accordingly, we affirm.

**AFFIRMED.**

6